JOHN W. TRUESDELL, as Administrator, etc., Respondent, *v.* HANNIE L. BOURKE, as Executrix, etc., Appellant.

Where fraud is alleged as the basis of an action it must be proved; a recovery may not be had on proof of a right of action on contract, or of some other character, although facts are proved which, in a proper form of action, would justify the recovery.

Where in an action under the act of 1858 (Chap. 514, Laws of 1858) by an administrator whose intestate died insolvent to disaffirm an alleged trans-fer of property alleged to have been made by the intestate in fraud of creditors, it appeared that the money in question was paid by a third person to B., defendant's testator, who was the pastor and treasurer of a church, to be used for church purposes in performance of a promise made by said intestate, and that the money was paid by B. upon a mort-gage on the church property, the complaint alleged and the answer admitted a demand by plaintiff for the money, but it did not appear that at the time of the demand B. was informed of the facts upon which plaintiff based his claim. *Held*, that the demand was insufficient to charge B. with notice.

*Truesdell* v. *Bourke* (80 Hun, 55), reversed.

(Argued February 8, 1895; decided March 19, 1895.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order made July 10, 1894, which affirmed a judgment in favor of plaintiff entered upon a verdict, and also affirmed an order denying a motion for a new trial.

The following is the opinion in full:

" This action was commenced in May, 1885. The original defendant was William J. Bourke, a Catholic priest, and the pastor of the church of St. John the Baptist in Syracuse, who died in April, 1887, and the present defendant is the executrix of his will, having been substituted as defendant after the death of her testator and after the action had been pending for more than two years. The parties seem to agree that the action is brought under ch. 314 of the Laws of 1858, which gave a new remedy to the administrator of a person who died insolvent by permitting him to ' disaffirm, treat as void and resist all acts done, transfers or agreements made in fraud of the rights of any creditor.' This, of course, refers to transfers of property made by the deceased in his lifetime, and the administrator is authorized to question them or to set them aside in behalf of creditors, though they may have been binding upon the deceased himself. It is quite clear that the complaint states a case within the statute. It alleges that one John Fitzgerald died intestate and insolvent on the 28th of February, 1882, and then, after stating that the plaintiff was appointed his administrator on April 11, 1882, and that deceased at the time of his death owed· debts in a large amount which he was unable to pay, it proceeds to aver and state the actionable facts as follows : ' That being so indebted, and with intent to hinder, delay, cheat and defraud his said creditors, and being then the owner of and in possession of about $8,000 in money, the said John Fitzgerald deposited it in a bank in Syracuse, in the name of one Kate Fitzgerald, keeping in his possession and under his control the bank book representing said deposit. * * * The plaintiff further alleges that said Kate Fitzgerald, shortly after the death of said John Fitzgerald, discovered said bank book among the effects of said deceased, and wrongfully and unlawfully took the same and drew out said money from said bank and appropriated the same to her own use with the intent to cheat and defraud the creditors of said John Fitzgerald out of the same, and without any claim or right, title or interest therein.'

" It then avers that in March, 1882, the defendant received from Kate Fitzgerald the sum of $1,000 so deposited in bad

faith with intent to hinder, delay and defraud creditors, and with knowledge of all the facts.

"There can be no doubt with respect to the character and scope of the action. It is based upon allegations of actual fraud perpetrated first by Fitzgerald in depositing the money to the credit of his niece Kate, then by her in procuring the bank book and drawing it out, and, finally, by Father Bourke in receiving it from her in bad faith with knowledge of all the facts, and with the intent to defraud creditors.

"All these allegations of the complaint were put in issue by the answer, and the fundamental objection to the judgment, which the plaintiff has recovered, is that the complaint is unproved not in some particular or particulars only, but in its entire scope and meaning, and hence it is not a mere variance but a failure of proof. (Code, § 541.) There is not the slightest proof in the case that the deceased debtor ever deposited any money in any bank to the credit of his niece or any one else, or that he ever saw the pass book, or that she ever had it or drew any money from any bank, or that either she or Father Bourke had any knowledge that the deceased owed any one a dollar at the time of his death. It was shown that the debts of the deceased existed in judgments of long standing which had been docketed in the clerk's office, and that all the parties to the fraud alleged lived in the same ward and attended the same church, but surely this could not be either actual or constructive notice of the facts constituting the fraud. There is, indeed, proof of two facts in support of the complaint. One is that the deceased debtor was insolvent, and the other is that Father Bourke received from Kate, the niece of the deceased, about a month after his death, the sum of $1,000 in performance of a promise which the uncle had made to him some months before, to contribute that sum in aid of the building of a parochial schoolhouse upon the church property, but that was only one step in the direction of establishing the allegations of the complaint.

"It appeared that the deceased clergyman paid this money upon a mortgage which a savings bank held against the church property on the 8th of July, 1882. The learned trial judge, under the objection and exception of counsel for the

defendant, submitted two questions to the jury : First, whether Father Bourke, when he received the money, was a party to the alleged fraud, of which, as we have seen, there was no evidence upon which that fact could have been found. Secondly, whether, though innocent of any fraud or wrong when he received it, he had not received notice of the fact constituting the alleged fraud before he paid the money upon the mortgage, and if he had then he was liable.   There was no proof of any actual notice to him of the fact at any time or in any form.   The complaint alleged and the answer admitted that before the commencement of the action, which was on May 28, 1885, the plaintiff demanded the money. This it should be observed was nothing more than a bare demand without any information as to the facts upon which the plaintiff's right was founded.   The defendant was the treasurer of the church, and if he received it in good faith he was guilty of no wrong in paying it over, unless, at the time, he knew that some other person had a better right to it in law or equity.   In such cases it would seem to be reasonable that a demand should be accompanied with information as to the facts.   (*Gillet* v. *Roberts*, 57 N. Y. 28.)   The learned judge, following the theory of the complaint, instructed the jury that if at the time the payment was made upon the mortgage the original defendant had no knowledge of any fraud on the part of the deceased debtor, or his niece, then there could be no recovery in the case.   There were but two items of evidence on this point.   One was the statement of a witness that Father Bourke had admitted to him that he had received the money, but *might have to pay it back.*   It would be quite difficult to say that this expression imputed knowledge on the part of the person who used it of any fraud whatever, but if it was used after the money had been paid out on the mortgage, it was obviously of no significance.   When the witness was pressed to fix the time when the demand was made his testimony was quite indefinite, and to say the least was just as consistent with a time subsequent to July 8th as a date before, and hence could not sustain a finding of knowledge before payment.   The other piece of evidence was a provision in the will of Father Bourke made in 1887, more than five years

after he had received the money and two years after the commencement of this action. This provision is to the effect that there was then deposited in a bank $1,000 which *belonged* to the school unless a judgment was rendered against him in this action in which event it was to be applied in satisfaction thereof.

" The jury were permitted to inquire whether this was not an admission that he then had the money in question, and, also, whether it did not tend to contradict or impeach his testimony that he had paid it on the mortgage five years before. The language does not warrant any such inference. Its meaning and purpose is quite obvious and it is entirely consistent with the testimony. The testator had received this money, and, as he said, had applied it upon the mortgage when it was intended for the school. The will simply provided that it should be replaced by a like sum, then on deposit, unless he or his estate was compelled to restore it. It is not an admission that he then had the money which had been paid to him by the niece of the deceased debtor, nor did it tend, in the slightest degree, to contradict or impeach his testimony. So that upon the question of knowledge of the alleged fraud, prior to the time that the money was paid upon the mortgage, there was really no evidence upon which to base a finding by the jury.

" It is quite clear that this action has been projected and tried upon an erroneous theory. The learned counsel for the plaintiff has abandoned it in his argument in this court, and he now suggests quite a different state of facts upon which to uphold the judgment. He ignores entirely any such thing as a disposition by gift or transfer on the part of the debtor in his lifetime, but, on the contrary, assumes that he owned and was in possession of the money at the time of his death, and that afterwards, in some way, it came to the hands of his niece, who was induced by the priest to give to him $1,000 of it upon the claim that the uncle had promised him that sum. If it could be said that these facts were pleaded and found this judgment would clearly have a more substantial basis to sustain it. It would not be necessary then for the plaintiff to call to his aid any of the provisions of the act of 1858.

"The title to money or other personal property which a deceased person owns at the time of his death passes to his administrator, in case of intestacy, when appointed, as of the time of the death. (*Rattoon* v. *Overacker*, 8 Johns. 126; *Priest* v. *Watkins*, 2 Hill, 225; *Stuber* v. *McEntee*, 142 N. Y. 203.) If, intermediate the death and the granting of letters, a stranger or any third party, without authority, collects, receives or appropriates any of the assets, they become liable to account for the same as administrators *de son tort* to the true personal representatives of the deceased. This I conceive to have been the law from the earliest times. (1 Williams on Ex. 296 [6th Am. ed.]; Schouler on Ex. § 184; *Thorp* v. *Amos*, 1 Sandf. Ch. 26; *Scoville* v. *Post*, 3 Edw. Ch. 203; *Van Horn* v. *Fonda*, 5 Johns. Ch. 388; *Campbell* v. *Tousey*, 7 Cow. 64.) The principle was long ago embodied in a statute (2 R. S. 81, § 60) and is now § 2706 of the Code, which reads as follows : 'Every person becoming possessed of property of a testator or intestate, without being thereto duly authorized as executor or administrator, is liable to account for the full value of such property to any person entitled thereto, and shall not be allowed to retain or deduct therefrom any debt due to him.' An action for money had and received or to account upon the special facts or for a tort if warranted by the facts, is all that is essential in such a case. It is plain that such is not the action which the plaintiff brought. This action is based upon fraud, and the plaintiff, before he can recover, must prove the complaint or substitute another in its place. (*Salisbury* v. *Howe*, 87 N. Y. 128.) Where fraud is alleged as the basis of the action it must be proved. The law will not permit a recovery by proof of a right of action upon contract or of some other character, and this though facts may be stated or may appear which in proper form might sustain such an action. (*De Graw* v. *Elmore*, 50 N. Y. 1; *Ross* v. *Mather*, 51 id. 108; *Barnes* v. *Quigley*, 59 id. 265.) It was the theory of the action, disclosed by the complaint, that the learned trial judge submitted to the jury. The fact, which is undisputed, that Father Bourke received from the debtor's niece, after his death, $1,000 in fulfillment of his promise to donate that amount for

the school would, in a proper form of action, go far to make him liable to account for it, but that fact alone would not be sufficient. Other facts should appear which are not contained in this record. There is no proof that the deceased debtor had any money at the time of his death, and none to show how the money which his niece gave to Father Bourke came to her possession. If it came to her possession through a disposition by gift or other transfer made by her uncle in his lifetime, valid between themselves, though void as to creditors, then her possession was not wrongful, at least until the transaction was disaffirmed, and the priest would not be personally liable for receiving the money in ignorance of any fraud after he had paid it into the treasury of the church in good faith. On the other hand, if the niece simply abstracted the money from the effects left by her uncle, then her possession was wrongful and she could give no title to another receiving it without legal consideration, though an innocent agent through whose hands it passed might be protected. In such a case, when the property consists of current money, the ultimate beneficiary, without consideration, would be liable. (*Spraights* v. *Hawley*, 39 N. Y. 441.) What the real facts are as bearing upon the nature of the possession by the niece it is impossible even to conjecture. If we look at the complaint, sworn to by the plaintiff after full opportunity to ascertain all the facts, the transaction is plain enough, but all we can learn from the proofs is that she had this money either in specie or in a check and gave it to the clergyman for the purposes stated.

" It is plain that we cannot affirm this judgment without disregarding the complaint entirely and then assuming certain facts upon another theory of the case, which are not conclusively established, and were not submitted to or passed upon by the jury. Moreover, even if we had the power to thus change the whole scope and theory of the action, it would be manifestly unjust to burden the defense with the costs of a litigation which, thus far, has proceeded upon a mistaken theory, or at least upon a theory which has not been sustained, and so we think that the fairest course is to remit the case for a new trial.

"The judgment should be reversed and a new trial granted, costs to abide the event."

*Louis Marshall* for appellant.

*C. G. Baldwin* for respondent.

O'BRIEN, J., reads for reversal.
All concur, except GRAY and BARTLETT, JJ., dissenting.
Judgment reversed.